FILED

2026 Aug-07 PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

REYES WELDING
CONTRACTORS LLC,
    Plaintiff,

v.

PILGRIM'S PRIDE
CORPORATION,
    Defendant.

**Case No. 4:24-cv-1800-CLM**

## MEMORANDUM OPINION

Plaintiff Reyes Welding Contractors, LLC ("Reyes") contracted with Pilgrim's Pride Corporation ("Pilgrim's") to perform welding work at Pilgrim's Athens, Georgia plant location. Reyes sued Pilgrim's for breach of contract, alleging the company failed to pay multiple invoices for sums owed totaling $1,679,690. Pilgrim's now moves to dismiss Reyes' claims or, in the alternative, transfer this litigation to the Middle District of Georgia, Athens Division. (Doc. 16).

For the reasons explained below, the court **DENIES** Defendant Pilgram's Pride Corporation's motion to dismiss for lack of jurisdiction, or in the alternative, to transfer venue. (Doc. 16).

## BACKGROUND

### A.    General Allegation: Breach of Contract

Pilgrim's is a Colorado corporation that produces chicken products, and Reyes is an Alabama LLC that performs welding services. This case stems from Pilgrim's contract with Reyes to manufacture, fabricate, and install metal objects on a Pilgrim's plant in Athens, Georgia. Reyes says Pilgrim's still owes an outstanding balance of $1,679,690.00 that Pilgrim's denies owing Reyes.

### B.     The Lawsuit

Reyes sued Pilgrim's in Alabama state court for five counts of Breach of Contract. (Doc. 1-1, pp. 4-5). Pilgrim's then removed the case to this court based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). And following the removal, Pilgrim's challenged (1) the court's personal jurisdiction over it, and (2) venue being proper in the Northern District of Alabama. (Doc. 4).

The court could not determine, based on the limited information it had, whether it had personal jurisdiction over Pilgrim's. So on September 25, 2025, the court ordered the parties to engage in jurisdictional discovery and asked the parties to focus on (1) all work Reyes Welding did for Pilgrim's, regardless of location, and (2) any 'prefatory' work Reyes performed in Alabama before completing an assignment at a Pilgrim's facility outside Alabama. (Doc. 15). The parties completed the jurisdictional discovery, and Pilgrim's now renews its motion to dismiss or, in the alternative, to transfer venue. (Doc. 16).

### C.     Jurisdictional Facts

In response to the court's order, the parties submitted declarations, answers to interrogatories, and a string of messages between employees of Reyes and Pilgrim's. (*See* 16-1, 16-2, 16-3, 16-4, 20-1, 20-2). Based on these submissions, the court finds these facts for the limited purpose of deciding whether it has personal jurisdiction over Pilgrim's:

Reyes Welding is based in Marshall County, Alabama. Before 2016, Reece Smith worked for Tyson's (another chicken producer) in Marshall County. Reyes welded for Tyson's while Smith worked for Tyson's.

Reece Smith left Tyson's to become Pilgrim's Regional Maintenance Director for plants in Georgia, Tennessee, Kentucky, and Texas. Upon arriving at Reyes, Smith told Bobby Owsley (and almost certainly others) about Reyes' welding work. Since then, Pilgrim's has paid Reyes to weld at Pilgrim's plants in Athens, Georgia; Canton, Georgia; Elberton, Georgia; Live Oak, Florida; Lufkin, Texas; and, Morefield, West Virginia.

Bobby Owsley was Pilgrim's Athens plant manager. Owsley called Reyes to invite Reyes's owner and employees to the Athens plant to discuss possible welding work. According to Yonathan Reyes, Reyes Welding performed work for Pilgrim's in Athens, Georgia every week after that first meeting until Pilgrim's refused to pay its outstanding balance— a period that ran from approximately 2020 to 2023.

When Pilgrim's needed Reyes, Bobby Owsley (in Georgia) would call or text Luis Reyes (in Alabama) to tell Reyes what work was to be done and how many men to bring. Luis Reyes would then email a quote for the work to Pilgrim's, which Pilgrim's would approve. If Reyes needed materials for the job, Reyes would order them from a different company in Georgia, Stewart Stainless, have the materials shipped to Reyes' shop in Alabama, and send the invoice to Pilgrim's. In his declaration, Yonathan Reyes did not address how often Reyes prefabricated these materials at his Alabama shop before taking them to Georgia, versus taking the raw materials to Georgia and completing all fabrication work on site. But one email exchange between Luis Reyes and a Pilgram's manager shows that Reyes prefabricated hangers at its Alabama shop before driving them to a Pilgrim's facility in Elberton, Georgia, where Reyes was to perform work on a freezer. (Doc. 20-2, pp. 34-37). So the court finds that *sometimes* Reyes prefabricated materials that Pilgrim's paid for in Alabama before moving them to Georgia for installation.[1]

Once the materials were ready, Reyes would collect the needed men and equipment, including welding machines, grinders, cutting discs, buffing pads, casters, chain hoists, and argon bottles, and drive to Athens to perform the agreed-upon work. Once Reyes finished its works, Reyes would bill Pilgrim's, and Pilgrim's would direct payment to Reyes' bank, Wells Fargo.

---

[1] One of Reyes' invoices for work at the Athen's plant lists this task: "make guarding for belts to shipping and install[.]" (Doc. 20-1, p. 35). As best the court can tell, this indicates that Reyes fabricated metal guards for conveyor belts at its Alabama shop, then shipped them to Athens for installation—just as Reyes fabricated hangers in Alabama before driving them to Elberton, Georgia for installation. But the invoices are admittedly difficult to read, hence the court's finding that prefabrication occurred "sometimes," not often or always.

## STANDARD OF REVIEW

When considering a Rule 12 motion, the court accepts the allegations in the plaintiff's complaint as true and views them in the light most favorable to the plaintiff. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012); *see also Moore v. Cecil*, 488 F. Supp. 3d 1144, 1155 (N.D. Ala. 2020). If the facts as pleaded could give rise to an entitlement of relief, then the court must deny the defendant's motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). If, however, the court accepts the pleaded facts as true, and the plaintiff "still would not be entitled to relief, the court must grant the motion." *Moore*, 488 F. Supp. 3d at 1155.

To survive a Rule 12(b)(2) motion to dismiss, "the plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002) (footnote omitted). A prima facie case of personal jurisdiction "is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990). Like a 12(b)(2) standard, to survive a 12(b)(3) motion to dismiss, the plaintiff has the burden of establishing a prima facie showing of venue. *Home Ins. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). When deciding either motion, the court looks to the factual allegations in the plaintiff's complaint and takes the facts as true "to the extent they are uncontroverted by defendants' affidavits." *Id.*

## DISCUSSION

The court starts by explaining why it has personal jurisdiction over Pilgrim's, then explains why it will not transfer venue to Georgia.

## I.    Personal Jurisdiction

Pilgrim's is registered to do business in Alabama (doc. 16-2, p. 5) and has two processing plants within the Northern District of Alabama, one in Guntersville and the other in Russellville. As discussed later, Pilgrim's presence within this district has caused Pilgrim's to sue and be sued in Marshall County state courts and this federal district court many times.

Yet Pilgrim's argues that this courts lacks personal jurisdiction over it because Pilgrim's did not act in Alabama, or make any omissions in Alabama, related to Reyes's claims for unpaid invoices. Instead, all relevant action or inaction occurred in Georgia, where the Athens plant is located. So the court decides personal jurisdiction by applying controlling precedent discussed below. *See, e.g.*, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021); *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1272 (11th Cir. 2022).

### A. Legal Standard

"[A] federal court generally undertakes a two-step analysis to determine whether there is personal jurisdiction over a nonresident defendant. First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. Second, if the court determines that the forum state's long-arm statute has been satisfied, it must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *Del Valle*, 56 F.4th at 1272. In Alabama, these inquiries merge because the state's long-arm statue permits the exercise of personal jurisdiction over nonresidents to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment. *See Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *see also* Ala. R. Civ. P. 4.2. So the question is whether exercising personal jurisdiction over Pilgrim's would violate the Fourteenth Amendment's Due Process Clause.

"At bottom, due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless its contacts with the state are such that it has a fair warning that it may be subject to suit there." *Del Valle*, 56 F.4th at 1275 (citing *Ford*, 592 U.S. at 360). A nonresident defendant's contacts with a state can be evaluated one of two ways: "(1) the plaintiff can show that the defendant has continual and systematic contact with the State (*i.e.* 'general jurisdiction'), or (2) the plaintiff can establish a substantial connection between the conduct at issue and the state where the lawsuit was filed (*i.e.* 'specific jurisdiction')." *Moore*, 488 F. Supp. 3d at 1156.

The parties agree that general jurisdiction is lacking because Pilgrim's does not have continual and systematic business in Alabama. So Reyes must plead facts showing the requirements for specific jurisdiction are satisfied. Specific jurisdiction is a "defendant-focused" inquiry, meaning "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citations omitted) (emphasis in original). When looking for specific jurisdiction, courts examine "whether (1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle*, 56 F.4th at 1275.

Reyes must plead enough facts to establish the first two elements. *See id.* If it does, Pilgrim's must then "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted).

### B. Application

While Reyes pleads five one-sentence counts, all essentially raise the same claim: Pilgrim's breached its contract with Reyes by failing to pay about $1.7 million in invoices. (Doc. 1-1, pp. 4-5). While Pilgrim's has yet to file an answer, the parties' jurisdictional discovery suggests the dispute is over the billed amount, with Pilgrim's arguing that its payment of about $1.3 million covered "all bills to date since 2020" (doc. 20-2, p. 15),

and Reyes responding that the $1.3 million paid did not accurately reflect the quoted cost and/or did not cover the correct work done (*id.*, p. 21).

With that in mind, the court must determine whether it has specific personal jurisdiction over this dispute by looking at three things: (1) whether Reyes's claim rises from or relates to Pilgrim's contact with Alabama; (2) whether Pilgrim's "purposefully availed" itself of the privilege of conducting activities in Alabama; and (3) whether it would violate fair play and substantial justice to force Pilgrim's to litigate in Alabama. *Del Valle*, 56 F. 4th at 1275. Reyes has the burden for the first two elements; Pilgrim's bears the third.

### 1.   Purposeful Availment

The court finds that Pilgrim's has purposefully availed itself of the privilege of doing business in Alabama. As mentioned, Pilgrim's is registered to do business in Alabama and has two processing plants in Alabama. So there's no question that Pilgrim's takes advantage of the business opportunities afforded by Alabama's laws and court systems.

That said, Pilgrim's was not doing business in Alabama in this case; it was *using* an Alabama business to perform work in Georgia. Normally, that would mean Reyes must show that Pilgrim's availed itself of Alabama's privileges under either the effects test or the minimum contacts test. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). But the effects test does not apply in contract cases, *Louis Vuitton*, 736 F.3d at 1357, so Reyes' facts must satisfy the traditional minimum contacts test to establish personal jurisdiction.

And pointing to a contract alone is not enough. "[N]either merely contracting with a forum resident nor the forum resident's unilateral acts can establish sufficient minimum contacts." *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010). "Rather, when inspecting a contractual relationship for minimum contacts, [courts] follow a highly realistic approach that focuses on the substance of the transaction: prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing. The focus must always be on the nonresident defendant's conduct, that is,

whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum. This focus ensures that a defendant will not be subject to jurisdiction based solely on random, fortuitous, or attenuated contacts." *Id.* (internal quotations and citations omitted). Instead, "those contacts must show that the defendant deliberately reached out beyond its home, such as by entering a contractual relationship centered in the forum." *SkyHop Techs., Inc.*, 58 F.4th at 1230.

Here, the jurisdictional evidence shows that Pilgrim's deliberately and repeatedly reached into Alabama to create contractual agreements that impacted Alabama. Having just left Alabama, Reece Smith suggested that Pilgrim's reach out to Reyes, who Smith knew was based in Alabama, to perform welding works at Pilgrim's Athens, Georgia plant, plus several other plants around the Southeast. Bobby Owsley called the Reyes's in Alabama and invited them to leave Alabama and come to Georgia to look at the Athens plant, then contracted with Reyes for several years to leave Alabama to come work in Georgia. Every time Pilgrim's needed work done, someone from Pilgrim's would call, text, or email someone in Alabama. Every time materials were needed for the job, Pilgrim's paid for the materials that were shipped to Reyes's shop in Alabama, where the materials were either prefabricated in Alabama for installation in Georgia, or they were driven by Alabama workers into Georgia. And Pilgrim's paid Reyes to send those Alabama workers into Georgia to perform work. The jurisdictional evidence suggests this happened between 100-200 times (*see* doc. 20-2, pp. 17-32)—meaning that Pilgrim's reached into Alabama to initiate more than 100 distinct agreements with an Alabama-based company.

In short, Reyes points to more than just contracts. Reyes offers some of the "plus factors" that the Circuit Court has used to connect the defendant with the jurisdiction, including "initiating the contractual relationship," "sending materials to the plaintiff for inspecting or use in shipping," "establishing a relationship by placing multiple orders," and "negotiating the contract via telefaxes or calls with the plaintiff" in the forum state. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1268-69. The court thus finds that Reyes sufficiently shows purposeful availment.

### 2. Related to Contact with Alabama

Having found that Pilgrim's deliberately reached into Alabama, the court must "focus on the essential foundation of specific jurisdiction– whether there is a strong relationship among the defendant, the forum, and the litigation." *SkyHop Techs., Inc. v. Narra,* 58 F.4th 1211, 1229 (11th Cir. 2023) (quotation marks omitted). And a relationship is enough; Reyes need not prove direct causation. *Id.* (citing *Ford, supra*).

The court finds that Reyes's breach of contract claim is sufficiently related to Pilgrim's repeatedly reaching into Alabama to contract for Reyes's services. The agreements (*i.e.*, the contracts that were breached) were simple: Reyes agreed to send men and materials to Georgia to perform welding work, and in return, Pilgrim's agreed to send money to Reyes in Alabama. The alleged "breach" is Pilgrim's failure to send the agreed-upon amount of money to Alabama. Of course, that's not all that Pilgrim's sent or failed to send into Alabama that must be proved at trial. To prove there was a valid contract to breach, Reyes will show that Pilgrim's reached into Alabama by telephone, email, or text to initiate then execute the agreement. The court thus finds that there is a sufficient relationship between Pilgrim's reaching into Alabama to initiate and execute the agreement and Reyes's claim against Pilgrim's.

### 3. Fair Play and Substantial Justice

The burden now shifts to Pilgrim's to explain why this court exercising personal jurisdiction would offend "traditional notions of fair play and substantial justice." *SkyHop Techs.*, 58 F.4th at 1231. To do so, the court considers "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in resolving the dispute." *Del Valle*, 56 F.4th at 1277 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quotation marks omitted)).

1. *Burden on Pilgrim's*: Pilgrim's argues that "[l]itigation in Alabama increases the burden on all parties regarding inspection of the disputed work and examination of relevant documents." (Doc. 16, p. 10).

9

But this is an overstatement. The parties needn't be in Georgia to examine the relevant documents; they need only be at a computer or conference table. That can be done anywhere. Nor does the jurisdictional discovery suggest that physically examining the Athens Georgia plant is the crux of the dispute because it doesn't appear that the parties dispute the quality or quantity of Reyes' work. Rather, Pilgrim's told Reyes that it had paid all invoices (*see* Doc. 20-2, p. 15), and Reyes complained in part that Pilgrim's invoices suggest that Pilgrim's paid the wrong amount—*i.e.*, Pilgrim's did not pay the "quoted numbers." (*Id.*, p. 21). Reyes also complained that Pilgrim's P.O. numbers wrongly matched the work done. (*Id.*). In other words, the parties have picked an accounting fight, not a work quality fight. Georgia provides no better venue to fight about accounting than Alabama does. Plus, Pilgrim's witness Reece Smith (who initiated the contract) appears to be based in Kentucky, not Georgia, (*see* doc. 16-1, p. 4), and its seems that whoever processed Pilgrim's purchase orders and payments worked at Pilgrim's headquarters in Colorado, not at the Athens plant. (*See, e.g.*, doc. 20-1, pp. 5, 13-15) (Pilgrim's purchase orders and payments). So even though Georgia may provide some advantages for discovery, it does not appear to provide as much of an advantage as Pilgrim's suggests.

2. *Alabama's interest*: Because Reyes is an Alabama company that pays Alabama residents, Alabama has "significant interests at stake, including providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Del Valle*, 56 F.4th at 1277 (cleaned up). So this factor weighs heavily in Reyes' favor.

3. *Reyes' interest*: Similarly, Reyes has "an interest in litigating this case in [its] chosen home forum." *Id.* Because it appears that Reyes and its owners reside in Alabama, this factor weighs heavily in Reyes' favor.

4. *Interstate judicial system's interest*: Pilgrim's argues that "[t]he dispute wholly concerns alleged acts or omissions in Georgia," (doc. 16, p. 10), so the system's interest lies in Georgia. But "wholly concerns" is not accurate. This is a breach of contract case. The contract(s) were initiated by Pilgrim's reaching into Alabama to recruit then contract with an Alabama business. For years, Pilgrim's paid that Alabama business. Then

10

Pilgrim's allegedly failed to pay that Alabama business, thus causing injuries that were felt in Alabama. So the court finds that the interstate judicial system's interest finds no less satisfaction in Alabama than it does in Georgia.

—

To sum up, all three factors favor this court exercising personal jurisdiction. So will **DENY** Pilgrim's motion to dismiss based solely on the reasons mentioned above. But the court would be remiss not to also mention that, with two processing plants and many employees in this district, Pilgrim's often avails itself of the privilege of Alabama's state and federal court systems it tries to avoid here. In just the past year, Pilgrim's has filed lawsuits in the Marshall County state court, *see Pilgrim's Pride Corp. v. E-Crane Int'l USA, Inc.*, Case No. 50-CV-2026-900116 (Marshall Co. Circuit Court, Mar. 26, 2026), and this federal district court, *see Pilgrim's Pride Corp. v. Veal, et. al,* Case No. 5:25-cv-1949 (ALND Nov. 10, 2025). So Pilgrim's assertion that it would "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), to force Pilgrim's to appear in either court here rings hollow, particularly because Pilgrim's reached into Alabama to initiate the agreements at issue.

Because the court has personal jurisdiction over Pilgrim's, the court now must take up Pilgrim's alternative motion to transfer and determine the proper venue to adjudicate Reyes' claims.

## II.    Transfer Under § 1404(a)

Pilgrim's alternatively argues that the court should transfer this case to the Middle District of Georgia, Athens Division, under 28 U.S.C. § 1404(a). (Doc. 4, pp. 10-15). 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To address a motion under § 1404(a), "a court must determine: (1) whether the plaintiff could originally have filed the case in the venue to which the movant seeks to transfer the case; and (2) whether the circumstances of the case warrant transfer." *Walter Energy,*

11

*Inc. v. Walter Inv. Mgmt. Corp.*, 2015 WL 12751048, at *4 (N.D. Ala. Jan. 12, 2015).

A plaintiff's choice of forum is accorded considerable deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). And a "plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citations omitted). That said, "[t]he decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).

Reyes does not dispute that venue would be proper in the Middle District of Georgia, Athens Division, so the court only evaluates whether the circumstances of this case warrant transfer. Courts consider the following factors when evaluating whether transfer is appropriate:  "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135, n.1 (11th Cir. 2005).

### 1.  Convenience of Witnesses

Pilgrim's argues that the first factor tilts heavily in its favor because "most, if not all, of the relevant witnesses to the underlying investigation will be found in or around Athens, Georgia." (Doc. 16, p. 12). Consequently, Pilgrim's says, "[t]he expenses, time away from work, hardships, and inconvenience required of the key witnesses are substantially reduced if the case is transferred to the Middle District of Georgia, Athens Division." (*Id.*) The court disagrees.

It is true that any Pilgrim's witness who works at Pilgrim's plant in Athens is closer to the Georgia-based court. But all of the Reyes employees that negotiated the work orders or worked on the Pilgrim's projects are

likely in Alabama. And Reece Smith, who prompted the relationship between the parties, seems to be in Kentucky.

Plus, this case is based on the nonpayment of invoices, not the quality of Reyes's work. So accounting witnesses are key. Reyes's witnesses on the accounting issues are likely in Alabama, while Pilgrim's are likely in Colorado.

So as best the court can tell, more of the relevant witnesses live in outside of Georgia than in Georgia. And all of Reyes's witnesses seem to live in Alabama. So this factor is neutral at best.

### 2.  Location of Relevant Documents and Sources of Proof

The second factor turns on the location of relevant evidence. Pilgrim's says there may be documentation stored at its Athens, Georgia plant location. Perhaps. But the court finds it just as likely that most of the relevant documents (*i.e.*, emails, invoices, etc.) are stored electronically. And even if there is physical evidence stored at Pilgrim's Athens plant, there is no significant burden placed on Pilgrim's to retrieve and transmit the documentation electronically.

That said, there may be a need to inspect the Athen, Georgia plant if the amount or quality of Reyes's work becomes an issue. And that evidence is in Georgia. So this factor weighs slightly in favor of transfer.

### 3.  Convenience of Parties

The parties consist of one company located in Alabama, and another that is incorporated in Delaware with its principal place of business in Colorado, whose relevant plant is in Georgia, but also has locations in Alabama. Whether this case is litigated in Alabama or Georgia, Pilgrim's will be litigating away from its home states (Delaware and Colorado). So the court finds that Pilgrim's would not be unduly burdened by litigating in Alabama. And because Reyes is already based in Alabama, the court finds that this factor weighs against transfer.

### 4.  Locus of Operative Facts

The fourth factor, the locus of operative facts, slightly supports transfer. Again, this is a breach of contract case that centers on the

13

nonpayment of invoices. While some of the relevant facts will relate to the communications between the parties, the unpaid invoices pertain to work performed in Georgia. The court has explained why the jurisdictional facts suggest that accounting, not quality or amount of work, is the central issue. But it could be that whether Reyes performed certain work, or performed it well, could become an issue. Based on that *possibility*, the court finds that the locus of operative facts favors Georgia.

### 5. Availability of Process to Compel Witnesses

The fifth factor—the availability of process to compel the attendance of unwilling witnesses—weighs against transfer. Pilgrim's has not shown any witnesses who are unwilling to testify, provide documents, or otherwise cooperate in the litigation. And courts have found this factor to be unimportant when the movant fails to show that compulsory process would be necessary. *See, e.g.*, *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1361-62 (S.D. Fla. June 28, 2001) ("[Transfer] may also be denied where the movant does not show that the witnesses would be unwilling to testify and that compulsory process would be necessary.").

### 6. Relative Means of the Parties

The sixth factor, the relative means of the parties, weighs slightly against transfer. Reyes is a two-member limited liability company, so it could be that the company would face a greater burden litigating the case in Georgia than Pilgrim's, a much larger corporate entity, otherwise would. But Reyes and Pilgrim's are both corporate entities, both represented by sophisticated counsel, and nothing suggests that either party lacks the means to litigate this case in Georgia. So this factor weighs only slightly against transfer.

### 7. Forum's Familiarity with Governing Law

Pilgrim's also raises concerns about the seventh factor—the forum's familiarity with the governing law. (Doc. 16, p. 14). Pilgrim's asserts that the law of Georgia should be applied because the key events leading to the creation of the contract took place in Georgia. Even if that's true (and the

14

court does not find that it is), courts in Alabama routinely apply the law of other states. So the court gives no weight to this factor.

### 8.   Plaintiff's Choice of Forum

The eighth factor—the plaintiff's choice of forum—weighs against transfer. A plaintiff's choice of forum is entitled to considerable deference. *See Piper Aircraft Co.*, 454 U.S. at 255. But the plaintiff's choice may be entitled to less weight when the plaintiff is not a resident of the forum. *See Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1214 (N.D. Fla. 2020) (citing additional district court authorities). "Similarly, when the conduct at issue did not occur in plaintiff's chosen forum, court's give less deference to plaintiff's desired forum." *Id.*

Reyes' principal place of business is in Alabama, and the impact of the alleged lost payment was felt in Alabama. So this factor weighs against transfer.

### 9.   Trial Efficiency, Interest of Justice, Totality of Circumstances

Lastly, the ninth factor—trial efficiency and the interests of justice based on the totality of the circumstances—does not support transfer. Pilgrim's says most or all of the witnesses and relevant evidence are in Georgia, so it would be more efficient for the litigation to proceed there. But Pilgrim's hasn't provided any further details proving this assertion to be true, and as explained, the court questions its accuracy. Plus, Reyes is an Alabama-based company, so there is a direct connection between this case and Alabama.

The Eleventh Circuit has directed that the plaintiff's choice of forum should govern in the absence of significant contrary considerations. *Robinson,* 74 F.3d at 260. And here, there are simply no *significant* contrary considerations that warrant transfer. So the last factor weighs against transfer.

—

Having weighed all of the factors discussed above against each other, the court finds that the interests of justice are best served by litigating this action in the Northen District of Alabama, and that transfer

of this case would be inappropriate. Particularly weighty was Reyes' choice to litigate in its home forum, where Pilgrim's reached to initiate the relationship and where the impact of Reyes's alleged losses were felt. So the court will exercise its discretion and **DENY** Pilgrim's alternative motion to transfer venue, (doc. 16).

## CONCLUSION

For these reasons, the court **DENIES** Defendant Pilgram's Pride Corporation's motion to dismiss for lack of jurisdiction, or in the alternative, to transfer venue. (Doc. 16). The parties shall proceed with their Rule 26(f) conference and shall file their Rule 26(f) Report on or before August 25, 2026.

**DONE** and **ORDERED** on August 7, 2026.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE